IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  11-cv-00654-WYD

CAROLINE M. MARTINEZ,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision not to waive recovery of an overpayment of disability insurance benefits.  For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff filed this action in March of 2011 seeking judicial review of a final decision of the Commissioner not to waive recovery of an overpayment of disability insurance benefits ["DIB"].  By way of background, in August 1999, Plaintiff filed an application for DIB alleging that she had been unable to work since March 31, 1998. (Transcript ["Tr."] 17.)  On November 24, 2000, an administrative law judge ["ALJ"] found that Plaintiff was disabled as of her alleged onset date, March 13, 1998, due to major depression and somatization disorder.  (*Id.* 17-22.)

In April 2003, Plaintiff went to work for Phillipou Enterprises, Inc. ["Phillipou"] and worked there until June, 2005.  (Tr. 104, 158.)  After that job ended, Plaintiff worked for Personal Touch Maid Services, LLC from July to November, 2005.  (*Id*. 138).  She then worked for Sunrise Senior Living Services, Inc. until March, 2007.  (*Id*. 86-89, 102-103, 138.)

The file contains an inquiry form of August 12, 2005, from the Social Security Administration ["SSA"].  (Tr. 154-55.)  Plaintiff answered on August 20, 2005, reporting her work at Phillipou.  (*Id*. 156-63.)  She claimed she returned an earlier inquiry in April, 2005.  (*Id*. 156.)  On May 1, 2006, Plaintiff was requested to send in her pay stubs for 2005-2006 and was furnished a pamphlet explaining some of the rules.  (*Id*. 145.)  SSA also requested monthly gross wage figures from Phillipou.  (*Id*. 143-144.)

On June 9, 2006, the Commissioner notified Plaintiff through a Notice of Proposed Decision that her benefits would cease.  (Tr. 138-141.)  Plaintiff was informed that her work activity, which began in January 2004, was considered substantial gainful activity ["SGA"] and that she was not entitled to benefit payments beginning April 2004. (*Id*.)  The SSA explained to Plaintiff that her nine-month trial work period ended in December 2003, and that her disability ended because of substantial work as of January 2004.  (*Id*. 139.)  Nevertheless, Plaintiff continued to receive benefit payments through June 2006.  As a result, an overpayment was assessed in the amount of $15,537.70.  (*Id*. 23).

On July 19, 2006, Plaintiff requested a waiver of overpayment recovery.  (Tr. 25-32.)  She asserted that she was not at fault in causing the overpayment because she

-2-

did not know she was supposed to report her work activity. (*Id.* 26.) Because Plaintiff

continued to receive benefits until April 2007 while her appeal of the overpayment

determination was pending, an overpayment in the amount of $17,489.20 was ultimately

assessed. (*Id.* 64.) A Notice of Disability Cessation dated April 10, 2007, informed

Plaintiff that she was no longer entitled to DIB beginning November 2006 because of

substantial work. (*Id.* 64-67.) In May 2007, Plaintiff told an SSA employee that she

thought the agency was keeping the portion of benefit payments that exceeded the level

of SGA. (*Id.* 68.)

Plaintiff's request for waiver of overpayment was denied initially and after an

opportunity for a conference with an SSA representative. (Tr. 25-32, 54-55.) Plaintiff

then requested a hearing before an ALJ, which was held on June 8, 2009. (*Id.* 60-61,

204-16.) At the hearing, Plaintiff testified that the notices SSA sent her regarding the

overpayment were confusing, that she thought she was in compliance with the

requirements for reporting work activity, and that SSA kept changing the rules. (*Id.* 208-

09.) She said what SSA told her conflicted so much that she ended up in a mess. (*Id.*)

Plaintiff also testified that she had been employed as a home health care nursing

assistant until February 2007, when she was terminated for being rude to an elderly

person. (*Id.* 209-10.) Further, she testified that she was not receiving treatment for a

psychological disorder at that time. (*Id.* 211.)

Daisy Martinez, Plaintiff's daughter, also testified at the hearing. She testified

that Plaintiff had problems with her memory, that she had always helped Plaintiff with

paperwork, that she knew Plaintiff was supposed to report her earnings to the agency,

and that she reported all of Plaintiff's earnings to the agency during the time period in question. (Tr. 212-15.) She also testified that she did not know how it had come to pass that Plaintiff was in non-compliance because it was inconsistent with what SSA was telling them. (*Id.* 213.) Specifically, she stated:

> But I have known that my mom, because of me, has always been in compliance, because I have recorded all her work, all her check stubs, and every time she's done it, they've [SSA] said, "Okay, well this month, you made a little bit too much, so you have to cut your hours back." So she would tell her work, okay, now I can only work 12 hours this week. And so then again they say, "Okay, well now you're not working enough hours." So now she has to go back and say, "Okay, well, now can I say overtime?" And it's just – it became a big mess. And I don't understand how it would even come to this, you know, afer all these years. . . . I don't - - we just don't – it's confusing, I guess. Because one day the Social Security is saying, "You're working too less." Now, Social Security's saying, "You're working too much." And it's just - - it never made any sense. . . .

(*Id.*) Daisy Martinez also said that she and her mom had several meetings at the Social Security Office over this, and that some people at the SSA didn't even want to talk to them about the situation. (*Id.* 214.)

In a June 17, 2009 decision, the ALJ concluded that Plaintiff was "not without fault" in accepting the overpayment in the amount of $17,438.20, and, therefore, that recovery of the overpayment could not be waived. (Tr. 8-12). The ALJ made the following findings: (1) Plaintiff's trial work period began in April 2003, and ended nine months late, in December, 2003 (20 C.F.R. §404.1592); (2) Plaintiff's reentitlement period began in January, 2004, the first month after the end of the trial work period (20 C.F.R. 404.1592(a)); (3) Plaintiff's benefits cessation month occurred in February, 2007 (20 C.F.R. §404.1592(a)); (4) the reentitlement period ended February 2007 and the

benefit termination month occurred in April 2007 (20 C.F.R. §404.1592(a)); (5) the overpayment of $17,438.20 is correct; and (6) Plaintiff was not without fault in causing the overpayment (20 C.F.R. 404.510).  (*Id.* 11.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 3-5), making the ALJ's decision the final decision for purposes of judicial review. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).  This Court has jurisdiction to review the decision under 42 U.S.C. § 405(g).

Plaintiff argues that the ALJ erred in finding she was not without fault in accepting the overpayment of benefits because he failed to consider that her mental disability rendered her incapable of understanding the requirement for reporting of earnings. (Pl.'s Opening Brief at 2-4.)  Plaintiff also argues that her work at Phillipou Enterprises "should not have counted against her" because she worked fewer hours and had fewer or easier duties than other employees (*id.* at 2), and that the ALJ failed to consider whether she accepted the overpayment because she relied upon  "erroneous information from a local agent."  (*Id.* at 5.)

II.     ANALYSIS

A.     Standard of Review

The court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied.  *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quoting

*Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989)).  It "requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The court will "'meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met.'"  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

Finally, the court will "'consider whether the ALJ followed the specific rules of law that must be followed.'"  *Lax v. Astrue*, 489 F.3d 1080, 1048 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).  It  will not, however, "'reweigh the evidence or substitute [its] judgment for the Commissioner's.'"  *Id.*

B.   Whether the ALJ's Decision is Supported by Substantial Evidence and Free of Legal Error

With regard to recovery of overpayments, section 204(a)(1) of the Social Security Act ["the Act"] provides that "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made under regulations prescribed by the Commissioner of Social Security . . . ."  42 U.S.C. § 404(a)(1).  Section 204(a)(1)(A) of the Act directs the Commissioner to "decrease any payment under this subchapter to which such overpaid person is entitled, or [to] require such overpaid person or his estate to refund

the amount in excess of the correct amount . . . ." *Id.* Section 204(b) of the Act limits the effect of this section by providing that "there shall be no. . . recovery by the United States from any person who is *without fault* if such recovery would defeat the purpose of this title or would be against equity and good conscience." 42 U.S.C. § 404(b) (emphasis added).

The regulations implementing the sections of the Act concerning overpayments provide that a determination of whether an individual is "without fault" is a factual determination. *See* 20 C.F.R. § 404.507. "Whether an individual is without fault depends on all the pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have." *Id.* "What constitutes fault on the part of the overpaid individual. . .depends on whether the facts show that the incorrect payment to the individual. . . resulted from: (a) An incorrect statement made by the individual which [she] knew or should have known to be incorrect; or (b) Failure to furnish information which [she] knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which [she] either knew or could have been expected to know was incorrect. *Id.*

The Commissioner's "fault" determination "is a factual determination that must be upheld if it is supported by substantial evidence in the record as a whole." *Howard v. Sec'y of Health & Human Servs.*, 741 F.2d 4, 8 (2d Cir. 1984). Plaintiff has the burden of showing that she was "without fault" with respect to the overpayment. *See Watson v. Sullivan*, 940 F.2d 168, 171 (6th Cir. 1991). Any "fault" on the part of the Commissioner in making the overpayments does not bring an individual within the terms of the waiver statute if she

herself was not free from "fault".  *See* 20 C.F.R. § 404.507.  "'No showing of bad faith is required; rather, an honest mistake may be sufficient to constitute fault.'"  *Litvin v. Astrue*, No. 09 Civ. 8649(JSR)(HBP), 2011 WL 4834138, at *5 (S.D.N.Y. Oct. 12, 2011) (quoting *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983)).

I find for the reasons set forth below that the ALJ's decision is not supported by substantial evidence and that correct legal standards were not applied.  Accordingly, I find that this case must be reversed and remanded for further fact finding.

I first find that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider Plaintiff's mental illness in determining whether Plaintiff was without fault.  Plaintiff's mental illness and impairments related to same are extremely important to the resolution of the issue of whether Plaintiff was without fault.  Plaintiff was found to be disabled by the SSA due to major depression and a somatiform disorder.  The ALJ who found Plaintiff to be disabled noted that she had marked difficulties in maintaining concentration, persistence or pace as a result of her impairments.  (Tr. 18-19.)  He further found that Plaintiff's impairments "prevent her from understanding and remembering even simple instructions on a sustained basis." (*Id.* 20.)  The ALJ who made the current decision completely ignored these important findings in making the fault determination.

Given the prior findings of psychological disability, which were corroborated by the testimony of Plaintiff's daughter about Plaintiff's memory problems, there are strong indications from the record that Plaintiff's mental disability may have substantially interfered with her ability to comply with or understand the rules.  (Tr. 256, 68, 105.)  The ALJ did not properly consider this evidence, as required by the regulation at issue.  He should have

carefully considered whether Plaintiff's mental impairment impacted her ability to understand and comply with the reporting requirements of the Act.  He also should have developed the record on this issue, particularly since Plaintiff was not represented by counsel at the hearing.  *See Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir.1987) ("The [ALJ's] duty of inquiry takes on special urgency when the claimant has little education and is unrepresented by counsel."); *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1043 (2d Cir. 1984). This requires a remand of the case for further fact finding.

Indeed, the standard for whether a claimant was "without fault" at issue here surrounds Plaintiff's understanding, *i.e.*, "[what she] knew or should have known." (Def.'s Resp. Br. at 6).  The Commissioner correctly notes that Plaintiff wrote on July 19, 2006, that she "wasn't aware I was supposed to report work." (Tr. 26.)  In light of this as well as Plaintiff's demonstrated problems in the record with memory, Plaintiff's "impaired memory lies at the heart of the case." *Wimbish v. Sullivan*, No. 89-1293-OG, 1990 WL 180704, *6 (D.D.C. 1990).  I find the *Wimbish* case particularly instructive in this case.

In *Wimbish*, the court found that "the ALJ, in making his findings, ignored probative evidence of the plaintiff's diminished physical and mental condition which was highly relevant to the issue of fault." *Id.*, 1990 WL 180704, at *5.  There, the ALJ ignored a report of a neuropsychologist who opined that Plaintiff suffered from a chronic, serve impairment of psychological functions, including intellectual and memory skills which most likely caused her not to report her employment to the SSA.  *Id.*  The court found that "[t]he ALJ's reason for rejecting [the neuropsychologist's] report is inadequate, and the ALJ's conclusion is otherwise unsupported by the record." *Id.*  It concluded on that issue:

> [The neuropsychologist's] report was the only medical evidence in the record truly probative of the aspects of plaintiff's disability relevant to the issue of fault. As courts have noted, "[i]f the reasons supporting an ALJ's determination, as presented in his written decision, are inadequate, and if that determination is otherwise unsupported by substantial evidence, it will be reversed by a reviewing court." *Shirley v. Bowen,* 635 F.Supp. 132, 134 (D.D.C.1986) (citing *Rossi v. Califano,* 602 F.2d 55, 59 (3rd Cir.1979)). That principle guides the Court's conclusion with respect to this issue. The ALJ's reason for rejecting [the] . . . report is inadequate, and the ALJ's conclusion is otherwise unsupported by the record.

*Id.* Here, also, the ALJ's reasons for rejecting Plaintiff's mental impairments are inadequate, as he failed to consider the medical evidence in the record (and/or prior records before the SSA) that was truly probative on this issue.

I also find that the ALJ's reasons for rejecting Plaintiff's mental impairments as a basis to find her without fault are not valid, as they are disconnected from the requirements of the regulation and not supported by substantial evidence. The ALJ stated that "[t]here are no indications written in the record that she required a representative payee in her dealings with the Administration." (Tr. 12.) He also found that Plaintiff "testified she was not under any type of psychological care." (*Id.*) The regulation does not require, however, that a claimant be under a representative payee or that she be under the care of a psychological professional in order to be "without fault." Further, Plaintiff's daughter's testimony could be construed to mean that she acted in a manner similar to a representative payee, recording all Plaintiff's check stubs. (*Id.* 213.)

The ALJ also found that Plaintiff was informed that she was required to report any work activity to SSA when she filed her application for disability insurance benefits, and that the record did not reflect timely reporting of earnings. (Tr. 12). However, in light of

Plaintiff's demonstrated mental problems with memory and concentration, the argument that she remembered a 1999 notice that she needed to report her earnings is questionable. The memory problems could also account for the inconsistencies between Plaintiff's statements, as found by the ALJ. This must be adequately taken into account on remand.

Another reason the ALJ gave to reject Plaintiff's mental impairments as a basis to find Plaintiff not without fault was his lay opinion that "[d]uring the hearing, the claimant had no difficulties communicating or recalling details." (Tr. 12.) However, Plaintiff could not remember the details of her past employment or the amount she was paid per hour. (*Id.* 210.) More importantly, the ALJ's impressions from an extremely short conversation with the Plaintiff at the hearing cannot override the findings regarding Plaintiff's mental impairments, including memory problems, based on the medical evidence.

The *Wimbish* case also provide guidance on this issue. It distinguished between testing based on memory problems which was "more perfunctory in nature" based on a conversational meeting with the plaintiff versus a neuropsychologist's report based on a clinical interview of plaintiff and the performance of an extensive series of tests. *Id.*, 1990 WL 180704, at *6. The court found that the neuropsychologist's "report was specifically geared toward determining whether plaintiff suffered from long-term memory loss and recurring memory lapses sufficient to impair her ability to remember a reporting requirement", and that this "was the only medical evidence in the record truly probative of the aspects of plaintiff's disability relevant to the issue of fault." *Id.* Similarly, here, the only medical evidence in the record probative to Plaintiff's mental impairments was the evidence in the record when Plaintiff was found to be disabled. The ALJ cannot substitute his own

lay judgment for that of the medical evidence.  *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004).

If for some reason on remand, the ALJ does not believe he has sufficient medical evidence on this issue, he should order a consultative examination.  *Hawkins v. Chater*, 113 F. 3d 1162, 1169 (10th Cir. 1997) ([t]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of [disability].).  Again, he cannot merely rely on his own lay opinion.

I also find that the ALJ failed to properly consider whether Plaintiff was without fault in accepting the overpayments in reliance upon erroneous information from employees of the SSA.  20 C.F.R. § 404.510a states in that regard that "[w]here an individual or other person on behalf of an individual accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration   . . ., such individual, in accepting such overpayment, will be deemed to be without fault." *Id*. In this case, both Plaintiff and her daughter testified that they believed they were in compliance based on conversations with officials within the SSA, and that SSA kept changing the rules on them.  (Tr. 208-09, 212-14.)  Further, as noted earlier, there is evidence in the record that Plaintiff had told an SSA employee that she thought the agency was keeping the portion of benefit payments that exceeded the level of SGA.  (*Id*. 68.)

To demonstrate that the Plaintiff relied on erroneous information, she does not have to demonstrate that a specific named employee gave her false information, as argued by

the Commissioner.   Instead, when the issue is raised about reliance on erroneous information from SSA personnel (or that the claimant was misinformed), the ALJ must consider and address 20 C.F.R. § 404.510a and determine whether the claimant's argument about reliance on erroneous information is entitled to credence.  *See Ming v. Astrue*, No., 2009 WL 2495947, at *5-6 (E.D.N.Y. Aug. 13, 2009).   Thus, as addressed in *Ming* and equally applicable to this case, "[t]he ALJ should have considered plaintiff's claim that she was misinformed and developed the record in an effort to illuminate the details of her claim."  *Id.*  The ALJ's failure to consider and develop the record regarding this issue requires that the case be remanded for further fact finding."  *Id.*  That is because if the claimant "relied on erroneous information provided by SSA employees, she was not at fault for continuing to accept overpayments."  *Id.* (citing *Valente*, 733 F.2d at 1044-45); *see also Litvin*, 2011 WL 4834138, at *8-10 (finding that a remand was appropriate for further fact finding where the ALJ and Appeals Council never addressed the plaintiff's assertion that he called SSA each month and relied upon their statements that he was entitled to the payments he was receiving).

The ALJ also failed to specifically address the credibility of Plaintiff and her daughter, particularly as to the issue of whether Plaintiff accepted the overpayment in reliance upon erroneous information from the SSA.  *See* 20 C.F.R. § 404.510(a).  Courts have found that credibility findings are "critical to the 'without fault' determination."  *See, e.g., Albalos v. Sullivan*, 907 F.2d 871, 873 (9th Cir. 1990).  Given the context of this case and the issues raised by Plaintiff, credibility is a crucial factor in this case in determining whether she was

without fault.  Accordingly, the ALJ should have made explicit findings as to credibility.  *Id.*; *see also Valente*, 733 F.2d at 1045.

Based on the foregoing errors, the Commissioner's assertion that the fifteen minute hearing and the two-page findings and conclusion adequately addressed the issues is without merit.

I also find instructive the case of *Lieberman v. Shalala*, 878 F. Supp. 678 (S.D.N.Y. 1995).  There, in denying a disability insurance benefits recipient's request for waiver of recovery of overpayment of benefits, the ALJ failed to enumerate factors from agency rules for determining when the recipient was without fault, failed to consider whether the recipient relied on erroneous information from official source, and failed to make an explicit finding for the record regarding the recipient's credibility, as required to determine whether the recipient was without fault in receipt of overpayment, and so entitled to waiver.  *Id.* at 681. While the ALJ cited the pertinent circumstances he was supposed to consider in his decision, including the individual's age, intelligence, education, and physical and mental condition, he "failed to indicate how, or even whether, he applied them to the facts of this case."  *Id.*  The court further stated:

> At the hearing, for example, the ALJ failed to inquire about Lieberman's level of education or investigate her relative intelligence. Moreover, Lieberman testified that she took a multitude of medications, including synthroid for her thyroid condition and lithium for her manic depressive behavior.  Despite that testimony, the ALJ did not explore her physical or mental condition any further. Finally, Lieberman testified that she believed that she was entitled to continued benefits. . . .On remand, the Secretary must consider these factors as required by the applicable regulation.

*Id.*

Similarly, the ALJ in this case did not inquire into Plaintiff's level of education or investigate her intelligence, and did not explore Plaintiff's mental condition in any detail despite the record evidence about her impaired condition other than a perfunctory question about whether Plaintiff was receiving psychological treatment. The ALJ also failed to address or develop in the record Plaintiff's assertion that she relied on erroneous information from an official source, and failed to make explicit findings regarding Plaintiff's and her daughter's credibility, as discussed previously. I find this is particularly egregious as Plaintiff "appeared without counsel, and the ALJ thus had a duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Valente*, 733 F.2d at 1043 (quotations and internal quotation marks omitted).

Finally, I also find that the ALJ erred in failing to consider and develop the record regarding Plaintiff's argument that her work at Phillipou Enterprises should not have counted against her as SGA because she worked fewer hours and had fewer or easier duties than other employees. Plaintiff made this assertion in the Work Activity Report sent to the SSA in August 2005 (Tr. 160), and it was thus clearly a part of the record before the ALJ that he was required to develop. *Valente*, 733 F.2d at 1043. 20 C.F.R. § 404.1573(b) states, "If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that you are not working at the substantial gainful activity level." *Id.* It also states that if the work is done under special conditions that take into account the employee's impairment, the SSA may find that it shows that the claimant does not have the ability to do substantial gainful activity. *Id.*, § 404.1573(c). The ALJ's failure

to conduct any fact finding on this issue or address the issue in his decision was legal error that must be addressed on remand.

III.     CONCLUSION

Based upon the foregoing, I find the ALJ's decision is not supported by substantial evidence and that the ALJ committed legal error in his decision by not examining all the pertinent circumstances, as described above.   A remand "is appropriate to consider relevant, probative, and available evidence that was not explicitly weighed by" the Commissioner. *See Dorman v. Harris*, 633 F.2d 1035, 1040 (2d Cir. 1980).  It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated March 28, 2012

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge